*117
 
 Nash, C. J.
 

 The bill is filed to settle the accounts of the firm of the parties, which ran through a period of fifteen years. A reference was made to the Clerk and Master to state the accounts. 'The Master made his report to this term, and both parties have filed exceptions. Those of the defendant were principally urged and insisted on. The first exception filed by the defendant strikes at the report
 
 in liimne
 
 and, if allowed, sends it back to the Master. It is, “that the Master has not himself'“examined the books of the firm, although tendered to him, even so far as to ascertain the amount and nature of the debts remaining due to the firm, or of its liabilities, or of the amount received by each partner out of the funds of the firm for his own use, nor in other matters reported on ; but as to all, has relied upon the summary statements made by one to whom the accounts had not been referred, and who was not acting as the deputy, nor under the authority of the Master of the Court, at the time he prepared the said summaries.”
 

 In his report, the Master states that he ‘
 
 ‘
 
 repeatedly called upon the counsel of the parties to' exhibit before him the state of the books, to be made as each might contend the entries did or ought to appear — at the same time informing them that he should make out no accounts of the kind for either party.” Upon inquiring of the Master, we find such has been his practice in his office, where the accounts have run through many years, and the books containing them numerous. The practice is founded in reason ; and no case exemplifying its correctness more fully could present itself, than the one we are considering. The business of the firm was tire sale of books, stationery and fancy articles. The co-partnership has existed fifteen years ; and the report states, that the accounts the Master was required to state, ran through thirty-five folio volumes, and that, it would have taken him six or nine months, as he was informed and believes, to have performed the duty. Now when it is recollected that
 
 as Cleric and Master
 
 he cannot be allowed by the Court more than $50 for taking an account, it is manifestly unjust to require of the Master to wade-through books requiring such labor. Besides, it would require too much of the time of the Master. The practice works no hardship to the parties. If they mutually desire a decision of the
 
 *118
 
 controversy, they can employ a commissioner who, for a proper consideration, can perform the work. If they do not so choose, but for any cause prefer going before the Master, they must be prepared to exhibit their accounts ; not as scattered through many books, but brought together in one account, as either claims, each furnishing his own account, and presenting the state of the books, as each may contend the entries did or ought to appear. By pursuing this course, more complete justice can be done, the cause expedited, and much delay avoided. The refusal of the Master to examine the books,
 
 as required
 
 by the parties, was in accordance with the practice of the office heretofore observed, and we feel no disposition to interfere with it.
 

 The second ground alleged in the first exception is in this case untenable. It is true Mr. Whiting, the gentleman who furnished the summaries, was not the person to whom the accounts were referred. But at the time he examined the books, he was the agent of the parties for that purpose
 
 ;
 
 and according to his deposition, the books were examined by him in their presence, and the summaries made at the dissolution of the firm, in
 
 1845.
 
 The deposition of Mr. Whiting is exhibited as the testimony upon which the summaries were admitted by the Master, as evidence in the cause. We think there was no error in this particular.
 

 The first exception is overruled.
 

 The second exception is overruled. The parties having refused to furnish to the Master such a statement, as by the practice in his office he had a right to require, he had a right to resort to such testimony as was within his power, to show what was the true state of the accounts between the parties.
 

 The third exception is substantially embraced in the first. It is founded on the alleged duty of the Master to examine the books. We have declared it was not the duty of the Master so to do, under the circumstances disclosed in the report, and which are not denied. It would be sufficient in examining this exception to ptop here ; but it is as well to state, that however correct in the abstract, the first and second reasons assigned in support of the exception may be, they do not apply to this case. The rule only applies to cases where the books are not only open to the inspection of both parties, but both parties must be so situated that they
 
 *119
 
 can have a daily inspection of them ; and cannot apply, when one of the parties is so situated that he cannot have an inspection of them when the entries are made, or in such convenient time thereafter, as that the entry may be deemed fresh, and fix him with notice. When both parties are enabled by their situation to see the daily entries, if they choose, the books must be presumed to speak the truth. In this case, the plaintiff Turner, in a short time after the copartnership was formed, removed to New York, where he managed a branch of the business; and the business here was under the sole control of the defendant Hughes. The third reason goes back to the supposed neglect of the Master, in not examining the books. This exception is overruled.
 

 It is further objected on the part of the defendant, that the Master did not examine the Bank books, and that they were no evidence, of themselves, of their being correct. Wr. Whiting, the agent employed by the parties for that purpose, testified that he did examine them, and that they were correct, and the private Bank books of the firm, kept by the defendant, were in evidence before the Master, and the same reason which exempted the Master from examining the books of the firm, extended to those of the Banks.
 

 The Master reports that the plaintiff made the statements as required, and established their correctness by the testimony of Mr. Whiting 5 and that he further exhibited two statements marked D. and C., and proved that the books were erroneous in the items therein set forth ; and submitted a statement marked B. founded on that statement; that the clerk refused to correct the books, (it being objected to by the defendant’s counsel,) unless directed by the Court. He further states, that if corrected as required, it will increase the assets of the firm, and thereby the indebtedness of the defendant to the plaintiff, to the amount of ,$5,264.72. The plaintiff excepts to the report of the Master in this particular. We think the exception is good and is sustained, and that the Master must correct his report in that particular before the Court, as he states he can do.
 

 The second and third exceptions of the plaintiff are disposed of in answering the first.
 

 It is much to be desired that rules should be adopted, regulat
 
 *120
 
 ing the practice in the Courts of Equity below, and in this Court. Much delay in the transaction of the business of this Court, would be thereby avoided, and mor.e certainty in the administration of equity cases be secured. We are fully apprised of the difficulties under which our brethren of the bar labor, in preparing their equity cases on the circuit; but we think their labors would be lightened by the adoption of rules by which their practice is to be governed. We do not, however, propose to adopt them at this time, because it would operate a surprise upon parties to causes now existing, and might thereby work a wrong. But we are disposed hereafter to adopt some rule, by which the Clerks and Masters below may be governed, in taking accounts referred to them. Regularly, when a reference is made to a Master, the Court provides for a full investigation of the matter, by a direction that the parses shall produce, on oath, all documents in their favor, when the nature of the case requires it, and shall be examined on interrogatories as the Master shall direct. The Master proceeds by issuing notices, directing the parties concerned to attend before him at the time mentioned. It is the duty of the parties then to lay before Mm written narratives, called states of facts, of the circumstances on which they rely, which must be supported by the requisite and proper testimony. After the evidence is all in, the Master issues notice for preparing the report, and he acts upon the evidence as it then stands, no additional evidence being receivable. At this stage of the proceedings, and whilst the report is still in draft, it is the duty of any dissatisfied party to lay before him written objections, specifying the points in which he considers it erroneous. If that be not done, exceptions, which are the mode of contesting it before the Court, will not be heard. These objections, being in writing, are turned into exceptions to tlie report. Adam’s Equity, 381.,
 
 2 3
 
 (in margin.) These rules we do not, at this time, extend to the Clerks and Masters of the Courts of Equity below ; but only to the Master of this Court, for his future conduct in taking accounts — at the same time recognizing as proper and correct the rule of practice set forth in answering tire first exception in this case. The Master’s report being reformed before us in Court, is in all things confirmed.
 

 Per Curiam. Decree accordingly.